E-FILED

Friday, 20 April, 2007  12:07:20 PM

Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| ROBERT O. IDAHOSA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-cv-1159 |
| | ) | |
| CREVE COEUR POLICE DEPARTMENT, | ) | |
| VILLAGE OF CREVE COEUR, and | ) | |
| BRIAN K. DESPINES, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Before the Court are the Motion for Summary Judgment filed by Defendants on November 15, 2006 [Doc. 27] and the Motion for Summary Judgment filed by Plaintiff on December 21, 2006 [Doc. 31]. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and Plaintiff's Motion for Summary Judgment is DENIED.

### BACKGROUND

On May 22, 2003, around 5:00 a.m., Plaintiff, who is an African-American male, was following a car occupied by a female acquaintance, a Caucasian. When the two cars entered the Village of Creve Coeur, the lead car, containing the female acquaintance, was pulled over by Defendant, Brian K. Despines, who was a Creve Coeur police officer, for speeding. Plaintiff, in turn, pulled his car over and stopped behind Officer

Despines' police cruiser.  Officer Despines approached
Plaintiff's vehicle and asked why he had stopped.  Plaintiff
explained that he was following the lead car.  At that point,
Officer Despines indicated that because the lead car was
speeding, Plaintiff also must have been speeding.

Officer Despines issued Plaintiff a speeding ticket.  In
his deposition, Plaintiff states that he wanted to challenge the
ticket.  (Robert Idahosa Deposition 30-31).  However, he did not
appear in Court at first because of a family matter and later
because he was on military duty. (Idahosa Dep. 31).   He then
filed a "motion to vacate" which was denied by the traffic
court.  (Idahosa Dep. 31).   At some point, Plaintiff's license
was suspended for failing to pay the ticket.  Plaintiff then
indicates that he paid a fine in order to get his license back.
(Idahosa Dep. 34).  Plaintiff also appealed the traffic court's
decision to no avail.  (Idahosa Dep. 32).

The following facts are disputed.  Plaintiff states that
prior to taking his driver's license, Officer Despines stated:
"what are you blacks doing with our girls?"  Officer Despines
denies making any racial comments or remarks to Plaintiff.
Plaintiff also states that another officer arrived on the scene.
This second officer opened the passenger door of Plaintiff's car
and proceeded to search the interior of the car.  There is no
indication in the record as to the identity of this second

2

officer.  This second officer is not listed as a Defendant in this action.  Officer Despines denies anything but a visual inspection of Plaintiff's car, although he doesn't specifically deny that another officer was on the scene.  Finally, Plaintiff states that he was not speeding.

Plaintiff, acting *pro se*, filed the Complaint pursuant to 42 U.S.C. § 1983 alleging a number of violations of his Constitutional rights.  He alleges that Officer Despines discriminated against him on account of his race by issuing the speeding ticket.  He states that he was harassed by the officer because of his race.  He further states that his right to travel, to use the public roads, and his human rights were violated by Officer Despines.  Finally, Plaintiff alleges that his right to be free from unreasonable searches and seizures was violated.  Plaintiff lists as Defendants, in addition to Officer Despines, the Creve Coeur Police Department and the Village of Creve Coeur.  The Complaint does not make any specific allegations against these Defendants and merely indicates that they employ Officer Despines.  Plaintiff seeks money damages and equitable relief in the form of an apology, training for Officer Despines, and disciplinary actions.

**DISCUSSION**

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial."  Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24.  "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence."  Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the

4

[non-moving party]." <u>Holland v. Jefferson Nat. Life Ins. Co.</u>,
883 F.2d 1307, 1312 (7th Cir. 1989).  In doing so, this Court is
not "required to draw every conceivable inference from the
record -- only those inferences that are reasonable." <u>Bank
Leumi Le-Isreal, B.M. v. Lee</u>, 928 F.2nd 232, 236 (7th Cir.
1991).  Therefore, if the record before the court "could not
lead a rational trier of fact to find for the non-moving party,"
then no genuine issue of material fact exists and, the moving
party is entitled to judgment as a matter of law.  <u>McClendon v.
Indiana Sugars, Inc.</u>, 108 F.3d 789, 796 (7th Cir. 1997) (quoting
<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
587 (1986)).  However, in ruling on a motion for summary
judgment, the court may not weigh the evidence or resolve issues
of fact; disputed facts must be left for resolution at trial.
<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

**A.  <u>Plaintiff's Claims against the Creve Coeur Police Department
and Village of Creve Coeur</u>**

Plaintiff's Complaint does not make out any specific claim
against these two entities.  As Defendants point out, however,
Plaintiff may bring a 42 U.S.C. § 1983 suit against a
municipality pursuant to the holding in <u>Monell v. Department of
Social Services of the City of New York</u>, 436 U.S. 658 (1978).[1]

---

[1] There is no vicarious employer liability for the
unconstitutional acts of an employee under a theory of

In order to make out such a claim, Plaintiff must come forth with evidence of a policy or regulation that, if enforced, results in a deprivation of a Constitutional right.  Id. at 690-691.  Plaintiff can accomplish this by presenting evidence of an express policy, a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law," or by presenting evidence that "the constitutional injury was caused by a person with final policymaking authority."  Roach v. City of Evansville, 111 F.3d 544, 548 (7th Cir. 1997) (citations and quotation marks omitted).

Plaintiff has presented no evidence of an express policy, or that there is a custom or usage, or that any deprivation was caused by a person with final policymaking authority.  The one incident that Plaintiff complains of is insufficient to establish such a claim.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

---

respondeat superior in a § 1983 case.  Phelan v. Cook County, 463 F.3d 773, 789 (7th Cir. 2006).

The record is simply devoid of any evidence that would support a
Monell claim.  Plaintiff's failure to present such evidence is
fatal to his claims against the Village of Creve Coeur and the
Creve Coeur Police Department.  Both are entitled to summary
judgment in their favor as a matter of law.  Koszola v. Board of
Education of City of Chicago, 385 F.3d 1104, 1111 (7th Cir.
2004)(noting that the summary judgment stage is when a party
must come forth with evidence that he would use to convince a
trier of fact of his version of events).

**B.  Plaintiff's claims against Brian K. Despines**

    **1.  Qualified Immunity**

        **a.  Introduction**

Defendants first argue that Despines is entitled to
qualified immunity.  Qualified immunity must be determined at
the earliest possible time in a lawsuit because it is immunity
from suit rather than a defense to liability.  Saucier v. Katz,
533 U.S. 194, 200-201 (2001).  In order to determine whether
Despines is entitled to qualified immunity, the Court must first
ask: "Taken in the light most favorable to the party asserting
the injury, do the facts alleged show the officer's conduct
violated a constitutional right?"  Id. at 201.  At the summary
judgment stage, the Seventh Circuit Court of Appeals, in
repeating this first question, held that "First, the plaintiff
must present evidence that, taken in the light most favorable to

the plaintiff, would allow a reasonable fact finder to determine that he has been deprived of a constitutional right." Washington v. Haupert, ___ F.3d ___, 2007 WL 896186, *4 (7th Cir. 2007); See also Mannoia v. Farrow, 476 F.4f 453, 457 (7th Cir. 2007) ("Although the privilege of qualified immunity is a defense, Plaintiff carries the burden of defeating it."). If the answer is yes, the Court must then ask whether the right was clearly established. Saucier, 533 U.S. at 201. Plaintiff has alleged three Constitutional violations: his Equal protection rights were violated; his right to travel was violated; and his right to be free from an unreasonable search and seizure was violated. Each allegation will be taken in turn.

### b. Equal Protection

Plaintiff alleges that his equal protection rights were violated when Despines issued him a ticket on account of his race.[2] Police officers are prohibited by the Equal Protection Clause of the Fourteenth Amendment from "selective enforcement of the law based on considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). In order to prevail on this claim, Plaintiff must show that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." Chavez v. Illinois State Police, 251

---

[2] Or, alternatively, that Despines issued him a ticket because of his relationship with a Caucasian woman.

F.3d 621 (7th Cir. 2001); Billings v. Madison Metropolitan
School District, 259 F.3d 807, 812 (7th Cir. 2001) (indicating
that a Plaintiff can show an equal protection violation by
showing that "a state actor has treated him differently from
persons of a different race and that the state actor did so
purposefully"); See also United States v. Armstrong, 517 U.S.
456, 465 (1996) (in a selective prosecution case stating that a
plaintiff must show the government's policy "had a
discriminatory effect and that it was motivated by a
discriminatory purpose" (citations and quotation marks
omitted)).

In order to determine whether the Despines' actions had a
discriminatory effect, Plaintiff must come forth with evidence
that he is a member of a protected class, that he is similarly
situated to members of the unprotected class, and that he was
treated differently from members of the unprotected class.
Chavez, 251 F.3d at 636; United States v. Barlow, 310 F.3d 1007,
1011 (7th Cir. 2002) (stating that in order "to establish
discriminatory effect, an African American claimant must
demonstrate that a law or regulation was enforced against him,
but not against similarly situated individuals of other
races."). There is no question that Plaintiff, an African-
American, is a member of a protected class. However, Plaintiff
has identified no similarly situated person of the unprotected

class who was treated differently.[3]  Nor has Plaintiff presented

any statistical evidence that he was treated differently from

other motorists in the unprotected class who were similarly

situated.  Chavez, 251 F.3d at 640.  As Plaintiff has failed to

come forth with any evidence showing a discriminatory effect, it

is unnecessary to discuss whether there was a discriminatory

intent.[4]  Plaintiff therefore has failed to show that Despines'

conduct violated his equal protection rights.  As such, Despines

is entitled to qualified immunity on this claim.

### c. Right to Travel

Plaintiff next claims that his right to travel and other

human rights were violated by Despines.  It is unclear from

Plaintiff's Complaint, his motions, and his responses before the

---

[3] The failure to identify a similarly situated person also
forecloses a "class of one" theory of discrimination.  See Bell
v. Duperrault, 367 F.3d 703, 707 (7th Cir. 2004) ("The 'class of
one' plaintiff bears the burden of proving that he has suffered
intentional, irrational, and arbitrary discrimination.  He can
do so either by showing that he was treated differently from
identically situated persons for no rational reason, or that he
was treated worse than less deserving individuals for no
rational reason." (citations omitted)).

[4]  In order to show a discriminatory intent, Plaintiff must "show
that the decisionmakers in their case acted with discriminatory
purpose."  Chavez, 251 F.3d at 645.  Despines' comment (which
the Court will accept as true for the purposes of this motion)
of "what are you blacks doing with our girls" may be "strong
evidence of racial animus."  Id. at 646.  However, "such
comments do not by themselves violate the Constitution."  Id.
The Court also notes that Despines did not stop Plaintiff:
Plaintiff, himself, pulled in behind the police officer and only
then was he approached.

Court, exactly what other rights Plaintiff alleges the Defendant violated that would fall under the umbrella of his "human rights."  However, the right to travel, to generally move about freely, is a cognizable claim.  In Chavez, the Seventh Circuit held that:

> The right to travel 'embraces at least three different components:' (1) the right of a citizen of one state to enter and leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state.
>
> Id. 251 F.3d at 648 (citing Saenz v. Roe, 526 U.S. 489, 500 (1999)).

Plaintiff has presented no evidence that his right to enter or leave Illinois has been prevented by Despines' enforcement of Illinois' traffic laws.  He has presented no evidence that his treatment as a temporary visitor has been infringed (or that he is merely a temporary visitor to Illinois and not a resident therein); nor has he presented evidence that he has been treated differently than other citizens of the state as a new permanent resident.  There is simply no showing that any action of Despines in enforcing Illinois' traffic laws has actually deterred interstate travel, or any other type of travel.  See Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 903

(1986).  Thus, Despines is entitled to qualified immunity on this claim.

### d.  Right to be Free from Unreasonable Seizures

Plaintiff's further claim with respect to Despines is that he did not have probable cause to detain him.  The Fourth Amendment protects individuals from unreasonable searches and seizures and even a momentary detention can lead to a Constitutional violation.  See Whren, 517 U.S. 809-810 ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision.").  A search or seizure is not unreasonable if it is supported by probable cause. "Probable cause exists when 'the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense.'"  United States v. Muriel, 418 F.3d 720, 724 (7th Cir. 2005) (quoting United States v. Cashman, 216 F.3d 582, 586 (7th Cir. 2000)).  The relevant inquiry is whether Despines had a reasonable basis to approach Plaintiff and a subsequent reasonable belief that Plaintiff violated the law.

Notwithstanding Plaintiff's assertions that he was "arrested," Despines' initial contact with Plaintiff was nothing more than an investigatory stop.  See Berkemer v. McCarty, 468

12

U.S. 420, 439 (1984) (stating that "the usual traffic stop is more analogous to a so-called 'Terry stop', than to a formal arrest." (citation omitted)).[5]  In the situation that confronted Despines, it was reasonable of him to approach Plaintiff's vehicle and inquire:  Despines was in the process of issuing a traffic citation and Plaintiff pulled his car behind Despines' police cruiser.  No jury would find that Despines behaved unreasonably in approaching Plaintiff.

With respect to the momentary detention in order to issue the speeding ticket, the ulterior motives of Despines, even assuming racial animus based upon his statement, will not invalidate Despines' action in issuing the ticket if probable cause existed.  See United States v. Robinson, 414 U.S. 218, 221 n.1 (1973); Scott v. United States, 436 U.S. 128, 136-138 (1978); Whren, 517 U.S. at 809-813.  All of these cases stand for the proposition that an officer's ulterior motive does not invalidate objectively justifiable behavior under the Fourth Amendment.  See United States v. Bass, 325 F.3d 847, 850 (7th Cir. 2003).  The Court further notes that probable cause to

---

[5] In this case, the officer's actions do not fall into the ready confines of Terry v. Ohio, 392 U.S. 1 (1968), as there is no indication that Despines approached Plaintiff because he believed that criminal activity was afoot.  It would not be far-fetched, however, for the Defendants to argue that Despines merely approached Plaintiff for officer safety: that an officer reasonably could question an individual who approaches an officer while he is issuing a traffic ticket.  See generally Knowles v. Iowa, 525 U.S. 113, 117 (1998).

believe that Plaintiff was speeding does not require that the officer be certain that the law was violated.  A stop can be reasonable even if it is later revealed that there was no violation of the law so long as "the officer reasonably believed an offense occurred."  United States v. McDonald, 453 F.3d 958, 961 (7th Cir. 2006).

As indicated above, the first question in the qualified immunity analysis is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201.  As this case is at the summary judgment stage, the Plaintiff must affirmatively come forth with evidence that would lead a reasonable jury to believe that Despines violated his rights.

In this case, the only fact that Despines has presented is that the Plaintiff admitted to following a car that was stopped for speeding.  Did this admission, standing alone, provide Despines with a reasonable belief that Plaintiff also was speeding?  Whether or not this conclusion (without any supporting facts) is sufficient to allow this Court to find that Despines is entitled to qualified immunity requires analysis. See United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000) (stating "so long as the circumstances confronting a police officer support the reasonable belief that a driver has

14

committed even a minor traffic offense, the officer has probable
cause to stop the driver"); <u>See also</u> <u>United States v. Mounts</u>,
248 F.3d 712, 715 (7th Cir. 2001) (same).

Without any more information than this conclusory
statement, could a reasonable jury find probable cause?  I doubt
it.  At a minimum, the jury would need to know the circumstances
prompting Despines' conclusion, e.g.: the distance between the
two vehicles when he decided that the first car was speeding and
the time between the stop of the first car and the arrival of
Plaintiff's car at the stop.  This information may be supplied,
somewhat, by the Plaintiff's only evidence, his affidavit.  In
this affidavit, the Plaintiff indicates:

> 3.  That I drove roughly approximately
> between 50ft to 100ft behind the vehicle my
> white female friend was riding in at all
> time.  I was driving the legal speed limit
> posted on the highway and roads on that day
> and maintains legal speed limit.  That I was
> not speeding. [sic]
>
> 4.  While driving on Rout 474 and Main
> ,Public highway, there were other motorist
> driving in front of plaintiff and passing
> plaintiff on the same direction.  [sic]
>
> 5.  I noticed that the vehicle that my
> friend was riding was stopped by a vehicle
> who appears to be a police cruiser.  I
> notice the officer was out of his cruiser
> talking to the driver of the vehicle.  [sic]
>
> 6.  I pulled to the side of the road and
> stopped about 25ft to 30 ft behind the
> police cruiser.  [sic]

(Idahosa Aff., Doc. 35, Ex. D).

Defendants do not address the statements made in Plaintiff's affidavit.[6]  With only the bare information that Despines' acknowledges – that he gave Plaintiff a speeding ticket because the car he admitted to following was speeding – and Plaintiff's statement that he was not speeding, that he pulled in behind Despines after he already had exited his police cruiser and was talking to persons in the first car, this Court cannot find, as a matter of law, that Despines did have probable cause to detain Plaintiff in order to issue a ticket.  Rather, it would appear that the Plaintiff was given a ticket merely because he happened to pull in behind the officer and not because the officer had any objective reason to believe that he had been speeding.  As such, a jury could find that Despines lacked probable cause to detain Plaintiff.

In light of this conclusion, it is necessary to address the second Saucier question: whether the right was clearly established.  Id. 533 U.S. at 201; See County of Sacramento v.

---

[6] For example, Defendants do not argue that the affidavit contradicts the Plaintiff's deposition, Beckel v. Wal-Mart Associates, Inc., 301 F.3d 621, 623 (7th Cir. 2002), or that it is merely self-serving and unsupported by the record and therefore entitled to no weight.  Keri v. Board of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir. 2006).  In addition, Defendants Local Rule 7.1(D) argument is without merit as Plaintiff is proceeding pro se.  See Local Rule 7.1(D)(5).

Lewis, 523 U.S. 833, 841 n.5 (1998).  Defendants do not address
this issue.  The Supreme Court held, in 1997, that:

> An automobile stop is thus subject to the
> constitutional imperative that it not be
> 'unreasonable' under the circumstances.  As
> a general matter, the decision to stop an
> automobile is unreasonable where the police
> lacks probable cause to believe that a
> traffic violation has occurred.

> Whren, 517 U.S. at 810.

Thus, there can be no doubt that the right to be free from
unreasonable seizures was clearly established prior to the
relevant time period.  See Dreibel v. City of Milwaukee, 298
F.3d 622, 652 (7th Cir. 2002) (holding that "innumerable
decision . . . have clearly established the right to be free
from arrest without probable cause"); Jacobs v. City of Chicago,
215 F.3d 758, 773 (7th Cir. 2000) (holding that "it was clearly
established that a citizen may not be detained by law
enforcement officials without probable cause").  Therefore,
Despines is not entitled to qualified immunity on the claim that
he unreasonably seized Plaintiff.

### e.  The Right to be Free from Unreasonable Searches

In Plaintiff's briefs before the Court, he also argues that
Despines unreasonably searched his vehicle or that he directed
the unreasonable search by the second officer.  This claim was
not made in Plaintiff's Complaint, nor can this claim be
reasonably construed from the Complaint, and Plaintiff has not

17

sought to amend his Complaint in order to add this claim.  Even
if Plaintiff did assert such a claim, it is undisputed in the
record that Despines only visually inspected Plaintiff's vehicle
during the brief stop.  Merely looking into the windows of
Plaintiff's car does not constitute a "search" within the
meaning of the Fourth Amendment.  See Edmond v. Goldsmith, 183
F.3d 659, 662 (7th Cir. 1999) (stating that "the peering into
the car windows and the sniffing of the car by the dog outside
does not rise to the level of a search as that term of the
amendment has been interpreted by the Supreme Court" (citing
United States v. Place, 462 U.S. 696, 707 (1983) (concerning dog
sniffs) and Texas v. Brown, 460 U.S. 730, 739-740 (1983) ("It is
likewise beyond dispute that Maples' action in shining his
flashlight to illuminate the interior of Brown's car trenched
upon no right secured to the latter by the Fourth Amendment."),
among other cases).  As no Constitutional right has been
violated, Despines is entitled to qualified immunity on this
claim.

     In addition, Despines cannot be liable for the actions of
another officer under a theory of *respondeat superior*, Perkins
v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002), or under any
theory that he directed the conduct of the unknown officer:
there is no evidence that Despines played a supervisory role in
the stop of Plaintiff or that he directed the conduct of the

second officer.  As the second officer is not a party to this
lawsuit, any claims relating to this officer must fail.

### f.  Summary

In sum, while Plaintiff has the Constitutional rights to
the equal protection of the laws and to travel freely, the facts
before the Court reveal that Despines' conduct did not violate
those rights.  Therefore, Despines is entitled to qualified
immunity on these Constitutional claims.  Despines also is
entitled to qualified immunity on the Plaintiff's unreasonable
search claims as the facts presented do not reveal a
Constitutional violation.  The Plaintiff, however, has presented
sufficient evidence to withstand the defense of qualified
immunity on the claim of unreasonable seizure.  As a jury could
reasonably find that Despines lacked probable cause to detain
Plaintiff in order to issue the traffic citation, Despines is
not entitled to qualified immunity on that claim.

### 2. *Res Judicata* and Heck v. Humphrey, 512 U.S. 477 (1994)

Defendants next argue that Plaintiff pled guilty to the
speeding ticket and is therefore barred by *res judicata* from
challenging the ticket in this proceeding.  Illinois law governs
the preclusive effect of Illinois state court judgments, Hicks
v. Midwest Transit, Inc., 479 F.3d 468, 471 (7th Cir. 2007).
The doctrine of *res judicata* provides that "a final judgment on
the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980).  In order for a prior judgment to have preclusive effect, there must be "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or privies in the two suits." Doe v. Allied-Signal, Inc., 985 F.2d 908, 913 (7th Cir. 1993) (federal law); Hicks, 479 F.3d at 471 (state law).  The doctrine bars issues that were raised in the prior proceedings and those that could have been raised.  Hicks, 479 F.3d at 471. Defendant appears to argue that Plaintiff could have raised the issue of the constitutionality of the stop in the state court proceedings and that the failure to do so forecloses his current claim.

The problem with this argument is that it is unclear from the evidence cited that there was a final judgment on the merits of the Plaintiff's traffic case.  The only evidence that the Defendant cites to that would indicate a resolution of Plaintiff's traffic case is his deposition testimony.[7]  This testimony is not a model of clarity.  With respect to his ticket, Plaintiff testified that:

---

[7]  Defendants have not provided any state court documents that would show that Plaintiff pled guilty or that he was adjudged guilty.

I wanted to, you know, fight a ticket.  And
then I look at a ticket, which was a little
bit confusing.  One of them saying go to
court, the other one saying you have to pay
the ticket.  I wanted to go to court and
defend it.  The day come, I have to go to
Florida to see – my daughter was sick.  I
could not make the court date, and so I
call, I call the courthouse to let them
know, hey, I'm in a bind, can I move for
extension.  They say when you get back, you
can do it.

So when I get back, I was on military
duty and I was doing my two weeks military
training and that on the schedule, that was
on the 4th of June, so I could not make it,
so they say you file a motion to vacate it.
I said okay.  So I went and filed a motion
to vacate so I can challenge the ticket.

Q.  And did you file a motion?

A.  I did, yes, I did.

Q.  And the court denied that motion?

A.  They denied it.  Of course the judge
stated that he wanted me to pay – if I paid
the fees, they would dismiss it.  I said,
No, why should I pay the fees, you know.  I
said, For one thing, I was not wrong, you
know, on this case, so that's why I am here.
Why should I be paying them?  Me paying them
means, you know, I accept the ticket.  I
say, No.

The Judge says, There's no way I'm
going to dismiss it.  So that's how he did
it.  I went back to the court and what do I
do from here?  This will allow me to contest
a ticket, they wanted me to file an appeal,
so I went ahead and filed an appeal.  They
were represented by the state, and during
that process I thought I filed my brief,
right, because I don't know anything about
filing it.  So I file it the way I know it.
They object to I didn't file it properly.  I

> can't follow the – I didn't follow through.
> I could not afford a lawyer to help me out.

> (Idahosa Dep. 31-32).

He then goes on to state:

> I remember the judge told me we don't deal
> with the race.  You got to take it down to
> the court, the federal court on that one.
> I'm here for the ticket.  If you want to
> file something, you go down to the different
> court. . . . That's why I file under the
> federal court.

> (Idahosa Dep. 33)

Finally he states:

> Q.  Did you miss any work because of the
> incident?

> A.  I did not, but my ticket[8] was suspended
> because I refused to pay the ticket.  I
> said, I'm not going to pay.  But the
> secretary suspend my ticket because there
> was a request from the clerk here to have it
> suspended because I didn't pay.  So that's
> why I went ahead and finally paid.  Driving,
> you know how it goes.

> Q.  So your driver's license got suspended
> because you didn't pay the fine?

> A.  The fine, right.  So but later I paid it
> and they gave me my license back.  But
> during that time I could not drive.

(Idahosa Dep. 34)

Thus, it appears that Plaintiff did not pay the fine, was told

to file a motion to vacate, that the motion was denied, that a

---

[8] Based on the context, the Court construes this word as license,
and not ticket.

judge told him that he would not deal with "race" issues, that he appealed, that his appeal was dismissed for the failure to file a brief, and that he eventually paid a fine in order to recover his license.

Defendant does not explain how this series of events leads to the conclusion that "there was a final judgment on the merits rendered by a court of competent jurisdiction."  Defendant points to no Illinois law which provides that the payment of a ticket in order to recover a license constitutes a guilty plea on the speeding ticket.  Defendant also provides no state court judgment that adjudged Plaintiff guilty of the speeding violation on the merits.  Indeed, it is unclear whether Plaintiff was afforded an opportunity to address the Constitutional issues that he raises here.

An exception to *res judicata* applies where "the plaintiff did not have a full and fair opportunity to litigate his claim in state court."  Hicks, 479 F.3d at 471 (citation and quotation marks omitted).  A "full and fair opportunity" means that the "state court proceedings complied with the minimum procedural requirements of the Due Process Clause."  Id. (citation and quotation marks omitted).  There is no indication that, given the state court judge's statement that he would not consider "race" issues and the dismissal of the appeal on procedural grounds, Plaintiff was afforded a full and fair opportunity to

23

litigate the Constitutional issues that could have been raised.
Defendants also have presented no argument that there is
identity with respect to the parties or the causes of action.
For these reasons, Defendants' *res judicata* argument must fail
at this time.

Similarly, the Defendants' brief is woefully deficient in
arguing with respect to the applicability of Heck.  Heck
provides that a Plaintiff seeking money damages in a lawsuit
that, if successful, would render a previous conviction invalid
cannot bring suit pursuant to § 1983 unless the previous
conviction has been expunged or otherwise invalidated.  Id. 512
U.S. at 486-487.  At minimum, Defendant must show that Plaintiff
was convicted of speeding in order for this lawsuit to be
dismissed (or at least the damages portion).  Plaintiff's
deposition only offers a confusing rendition of events at the
state court level and Defendant has presented no other
documentary evidence of Plaintiff's guilt.  The Court is mindful
that, generally speaking, paying a speeding ticket without
seeking a hearing is an admission of guilt.  However, Defendant
points to no Illinois statute or case authority that states as
much; nor has Defendant presented any Court document that holds
as much.

The only evidence that would tend to indicate that
Plaintiff was found guilty of speeding is a document that

Plaintiff provides.  The last page of Document 31 appears to be an official court document which shows Plaintiff paid $75.00 for the speeding ticket and that such payment constituted payment in full of the outstanding fine and cost.  The Illinois Code provides that if a person fails to pay a "traffic fine, penalty, or cost imposed for a violation of the code," that person's diving privileges can be suspended.  625 Ill.Comp.Stat. §5/6-606.6(a).  The Code goes on to provide that once the fine has been paid, driving privileges will be reinstated.  <u>Id</u>. at § 5/6-306.6(d)(2).  This Code section and the court document provide clarity to Plaintiff's deposition testimony regarding the procedures he went through.

However, the documents, in-and-of-themselves, do not provide clarity as to whether Plaintiff pled guilty to speeding or whether he was adjudged guilty.  Traffic Court procedures are outlined by Illinois Supreme Court Rules 501 to 600.  Rule 529(a) provides that "[a]ll traffic offenses . . . may be satisfied without a court appearance by a written plea of guilty . . . and payment of fines, penalties, and costs . . . ."  Rule 552 provides that "[a] final disposition noted on the reverse side of the 'Complaint' [i.e. the ticket] shall be evidence of the judgment in the case."  Rule 556 goes on to provide procedures for when a person fails to appear for a court date – in each instance, a "judgment of conviction" is entered by the

25

Court depending on the circumstances.  Each of the Rules
indicate that a *written* document evidences a guilty plea or
adjudication.  Thus, the mere fact that Plaintiff paid the fine
does not necessarily render him guilty.  Based on the limited
evidence before the Court, the Court cannot find that Plaintiff
was adjudged guilty of speeding.  As such, it would appear that
Heck does not apply.[9]

---

[9] It appears to the Court that Defendants, had they simply
provided the necessary documentation, would easily prevail on
this argument.  As this Court cannot generate evidence out of
thin air that would support such an argument, it must fail.  In
addition, Defendants did not address Plaintiff's requests for
equitable relief.

**CONCLUSION**

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants on November 15, 2006 [Doc. 27] is GRANTED IN PART and DENIED IN PART and the Motion for Summary Judgment filed by Plaintiff on December 21, 2006 [Doc. 31] is DENIED. Summary judgment is GRANTED in favor of Defendants Creve Coeur Police Department and Village of Creve Coeur and against Plaintiff Robert O. Idahosa.   Summary Judgment also is GRANTED in favor of Brian K. Despines and against Plaintiff Robert O. Idahosa on Plaintiff's Equal Protection claim, Right to Travel claim, and Unreasonable Search claims.   Summary Judgment is DENIED with respect to Plaintiff's Fourth Amendment Unreasonable Seizure claim against Defendant Despines.

Entered this  20th  day of April 2007

                              s/ Joe B. McDade
                              JOE BILLY McDADE
                        United States District Judge